Tim Thornton for Appellant Federal Insurance Company. The first thing I want to talk about is whether there was a potential for coverage and therefore duty to defend and our contention that the district court erred in its decision on this point. We believe that there was potential for coverage because we in the insurance cases distinguish between disparate impact cases and disparate treatment cases and courts find coverage for disparate impact cases and not for disparate treatment cases because of the... When I read the complaint it looked like everything was on purpose according to the complaint. Well that's the citation I handed up was for that point because we view the complaint as very vague as a very plain and short statement of the case but not elaborating exactly what was going on and so what happened... I'm having trouble finding the vagueness. I have the it says that what they do is on purpose they refuse to rent to non-koreans at the multifamily residential rental properties. They refuse in the Koreatown section. They refuse to rent to African-Americans in the Beverly Hills section and what it lays down here is according to the Justice Department if they can prove it that these people are just maintaining segregated housing on purpose. And then let me just add to that the paragraph in the DOJ complaint that says the action was intentional willful and taken in intent to cause the harm would be one issue but just to directly address that issue they talk about the conduct constituting a refusal to rent, a refusal to negotiate for the rental or conduct otherwise making unavailable or denying dwellings to persons because of race, national origin and familial status. That comes from 3604A of the Fair Housing Act. I think the structure of your misunderstanding it is that the Justice Department alleged in its complaint intentional wrongdoing but they could as well have alleged in their complaint violation of the statute by a practice which unintentionally had a disparate impact and therefore there's a potential for coverage for this because it could be disparate impact and not intentional. Yes they could prove their case either way and so for instance this language. There have to be either allegations in the complaint that fall within the coverage or true facts known to the insurer that fall within the coverage or facts reasonably likely to occur as known to the insurer that would fall within the coverage and I don't understand where you get any of those required things. It would have to be a neutral practice of some sort and there was no allocations of a neutral practice. Were there facts that were known at the time to the other two insurance companies about a neutral practice? Well the other two companies were receiving communications from the insurer. They received the complaint and our position is the complaint is very vague. It uses this language otherwise making unavailable and the Texas Department of Housing decision last June the Supreme Court said took up the issue of whether the Fair Housing Act recognized a claim for disparate impact which was a surprise to since all the circuits had felt that that was the case but they took up that issue and what the court looked at is the title 7 uses this otherwise make unavailable language the ADEA uses this otherwise make unavailable language and the Fair Housing Act uses this otherwise make unavailable language and that's where the court found that there was the possibility for a disparate impact theory to be allowed and that's but if you combine that with the facts that are laid out here there doesn't seem to be any practice alleged and no adversely disproportionate impact. I had just trouble looking at the complaint and dividing that from anywhere and you're saying all you have to do is put in the statute and that puts them on notice? I think so I mean that's the law I think the California Supreme Court since the 60s has been narrowing and narrowing as so that it's not enough that the plaintiff might have claimed something different that would be within the coverage either the plaintiff has to claim it or true facts known to the insurer must make it likely that the complaint will be amended to that effect yes and that would do but there's nothing here like that now sometimes what happens is in a year or two into the litigation the discovery changes things and it turns out that there are some facts that would justify a complaint that would be within the coverage and then the plaintiff makes another tender of defense along with evidence of these new true facts which then become known to the insured through the tender but that never happened here there's nothing in the record to indicate that that's what you're what you what you've got here is oh an insurance policy that covers negligently inflicted injury but not intentional assault and battery the nothing else and the facts pleaded are the defendant walked up to me and punched me in the nose and no coverage now under the defendant's liability insurance for that and even though a plaintiff might have said the defendant negligently bumped me he didn't say it and never did say it and the true facts known to the insured are that that's not what happened it was on purpose and that looks like this case but that's why I'm having trouble understanding why your argument well that's the Delgado case you're describing right and and so all of those cases like Delgado and the cases it cites in there like Juan those are all individuals under homeowners policies they're not business entities and in the complaint it also alleges I don't think I don't think there's any doctrine in insurance law that distinguishes the business entities from the individuals in this respect well I think that you know anything homeowners policies are usually construed more liberally I would agree with that but there is a distinction between doing something yourself versus an agent or liable for it right so that federal versus steadfast the Court of Appeal found that there was potential coverage well that comes up in the child abuse and daycare centers all the time but here the complaint seems to say that Donald and Rochelle Sterling themselves did this themselves and through their agents but in you know paragraphs 10 and 12 and 13 they say and their agents and employees well that doesn't this argument now go to vicarious liability just just to get back to the disparate impact question which is no neutral practice is alleged I think the Texas Department of Housing's as a plaintiff at the pleading stage has to produce just statistical evidence showing a causal effect from the the neutral practice so there's no neutral practice alleged here so why doesn't the punch in the nose versus negligent bumping just say there isn't a disparate impact issue sufficiently raised by the complaint I mean I think the complaint really seems to follow the language of the statute and it doesn't really say one way or the other whether it's just for treatment or disparate impact I mean I think either of those are possible how would you characterize the neutral practice so later on in the case you know you could have things there were claims made that putting the word Korean in the name of building somehow indicated a preference for Korean Americans and therefore was discriminatory or that posting notices to the tenants in Korean and without an English translation was you know conduct that could have a disparate impact could discriminate against the other tenants there are things like that in there you know that would be the neutral practice those would be neutral practices posting the notices in Korean yeah well I just on that point you indicated in the district the district court said you had alleged later that ensures new facts that would have in effect put them on notice of potentially neutral practices are you making that argument now in the appeal as well the we have the interrogatories answers from the Department of Justice that are in the excerpt of record but National Union contends they did not get them I don't think century surety contends that was there was there a tender I mean the way you would have new true facts known to the insurance companies is that there would be a retender of the defense attaching the answers to interrogatories we don't have that in the excerpt there is no such retender is there no so are we is it fair to say we're looking as a legal matter just at the DOJ complaint the DOJ complaint there is correspondence in the fourth volume of the excerpt of record from Defense Council for the insured to the insurers talking about the case what's going on mentioning this related Sumner Davenport case a woman who claims she was terminated for not going along with these policies and that she had the insured had obtained a jury verdict a defense jury verdict in that case talking about the case being very vague they had no idea what the government was talking about so there is that as well that went to I can't rest all the insurers I can't find the vagueness in the complaint it seems like an unusually straightforward and clear one and also let me let me ask you about paragraph 15 that I was you've already been asked about it it where it says paragraph 15 the conduct of defendants is described herein was intentional willful and taken in disregard for the rights of others that is about as clearly as you could say and your insurance is not going to cover your wrongdoing now what I'm wondering is why would the government do that is there a different remedy when the conduct is intentional willful and taken in disregard of the rights of others more damages or penalties or something like that not that I'm aware of there I mean there is a provision for action but I'm not aware that doesn't matter if it's a difference it doesn't matter if it's disparate impact or intentional you get the same remedy yeah I don't know that often in in ordinary civil litigation people allege that something's negligent when everybody knows it's intentional so that the insurance will cover sure I mean that happened in Delgado that happened in many of the cases that have been discussed in the briefs but to hear it like to do is punish the Sterling's not their insurance company I don't know what they intended to do but they but they pled the case I think just parroting the statute frankly and the statute allows both types of theories and in on top of that you can have you know negligent supervision type of claims if you look at the proposed order that was sent with the letter from Defense Counsel to all the carriers it said it talks about training at want they want training for employees and agents they want very clear procedures set down so that's what the government's talking about they and the other carrier the other insurers had that information because it came in a letter from the defendant a pre-suit letter from the DOJ to the defense attorney and then that attorney to the carriers talking about this is what they want right this is what they want by way of a consent decree so they're talking about training and supervision they're talking about clear procedures so I think that you have that possibility and that's what the Court of Appeal in federal versus steadfast found that there's this potential claim for vicarious liability that there are these potential claims for negligent training and supervision the only need vicarious liability when there's not direct liability and this whole complaint sets out a case for direct liability I think it sets out it could be read both ways right because it does allege that the agents and employees said it did them themselves and it also hired other people to do them well I think if the government pleads if you if if your bus driver kills passenger the bus company may or may not have vicarious liability depending on whether it's a superseding intervening act but if the bus company has ordered the bus driver to kill or injure the passenger that's direct liability I would agree with that yes but that's not what's alleged in the complaint looks like it is it says that they did it I mean the other the defendants make a lot of the direction and control but that's just the definition of agency your agents and employees are under your direction and control it's just an independent contractor it says that Donald Sterling Rochelle Sterling and the Korean Land Company which they owned and the Sterling Family Trust which they controlled did this them directly and through agents and through agents okay but they also allege that conduct in other places where the conduct was done by agents and employees so I think that that raises that possibility of vicarious liability and that that's what the Court of Appeal found in federal versus steadfast that that would matter if the agents had done something that the Sterling's had not directed them to do and I think that's possible it's a possibility under the complaint your honor the complaint is very short it's like four pages long doesn't give a lot of information it just basically laying out the elements under the statute so so the extent that the National Union policy I think they argue employees volunteers others real estate manager are all insured so would they be then to the extent that they were doing intentional acts would they then not be would that then deprive federal of coverage so if they're all insured regardless under Minkler it would be excluded from coverage if the acts were intentional I think under Minkler you would look at that on a insured by insured basis so if you have an employee that commits an intentional tort and you don't direct them to do it like the bus driver example if you don't direct the then he'll have he'll have coverage excluded because he intended it it said the mother could be held you could get coverage for her individual tort or negligent supervision correct but that there was no expectation that she would have derivative liability from the son's liability yeah I think his act was intentional so if these employees and agents are insured under the policy and their act was intentional then to the extent you're claiming that it would there's a potential for vicarious liability it would be derivative of an insurance intentional act wouldn't that exclude them from coverage then no I don't think it would I think under Minkler given the separation of insured provisions you consider it on an insured by insured basis whether that insured intended it versus they're just vicariously liable or they're liable because of some negligence like negligent supervision or training so if they were vicariously liable that wouldn't be negligent supervision right that would just be derivative of the employees liability that's correct that's the definition of a curious liability right there's no so so your argument would be that there's alleged in this complaint negligent supervision yes particularly I think when you look at the proposed consent decree that was sent in advance of the lawsuit where they're talking about we want these clear procedures we want this training of your employees and agents yes I think there was your honor there's a public policy that underlies these definitions of occurrence and accident and intentional acts provisions and insurance policies the public policy is that people should not be able to insure against their own intentional wrongdoing even where insurance policies don't have that sort of clause it's often been implied by the courts and we have a statute in California California is not a common-law state in that sense yes even in the common-law states it's usually been implied by the courts yes now why wouldn't that apply likewise wouldn't there be a public policy against buying insurance for intentionally segregated creating segregated housing well the way the decisions have come down is to apply something like that public policy to disparate treatment cases but not to apply it to disparate impact cases or I agree with you on that distinction I think that's right yes but here at least so far and as at least so far as the complaint says and any true facts known and tenders made to the insurance company it's just plain intentional segregation old-fashioned 19 pre 1964 segregation is how it's pleaded you could read it that way and I think you could read it the other way that it's just vague and it doesn't say whether it's disparate treatment or disparate impact or whether there's a mix of all those types of claims there you want to save some remaining time for rebuttal yes thank you good morning I'm Rosemary Springer I'm going to present argument on behalf of Pele National Union Council for century and myself have divided our 20 minutes and equaling half so I will argue for National Union for tech I'd like to there's two grounds on which this court could affirm the decision below one is the decision the court made that there's nothing in the complaint that alleges anything other than intentional discrimination on the part of sterling and its agents the second ground is that it comes before you even get to the complaint is that Beverly Hills properties is not insured under coverage be of the National Union policy federal had the burden of proving before you even get to whether there's coverage whether there's an insured the only named insured under coverage B is near north there's no language in the policy that says that members of near north which apparently Beverly Hills properties is are covered nothing policy has no language covering so federal to meet its burden federal relies on a document it's not part of the policy it's called the border policy can only be amended order row isn't part of the policy no it's not part of the policy and it wasn't prepared by National Union was prepared by near north are we asking here whether there was a genuine issue of material fact as to whether Beverly Hills property isn't insured is that that's the standard that's the standard yeah we were the moving party but the non-moving party federal has the ultimate burden of proof so we would say our prima facie case was proven by showing the policy there's no language in the policy identifying them so they say look it's it was purchased for a purchasing group and then the purchasing group is listed on this document why isn't that enough to create a genuine issue material fact that the intent of the parties to the insurance contract was not to give a purchasing group an independent insurance but to ensure all of the members of the purchasing group right so the policy can only be amended or modified or changed by an endorsement made by National Union the border row is not issued by National Union so it can't change the terms of the policy then if you go and look at what the border of sex say well does this raise a tribal issue about coverage the border row identifies Beverly Hills property as a member of this purchasing group we don't deny that a purchasing group purchases insurance in general for its members and the border says that this number is insured under this policy number we don't disagree with that for a policy period that incepted on May 1st 2000 we don't disagree with that coverage a of the policy they're covered under that part of the policy the cover for 25 million dollars for a policy period that incepted May 1st 2000 they're covered because they're also covered on a two million dollar primary policy issued by Chicago title or Chicago insurance company so the purchasing Association did what it was supposed to do it purchased insurance for a member for 25 million dollars incepting on May 1st 2000 that's what the policy language says that's what the border of says there's still no tribal issue that we intended or the policy was changed to also add them as an insured for coverage be there's nothing that says that a purchasing organization has to purchase coverage for discrimination they didn't I mean it seems implausible that they might not have intended it the challenge then is whether can we rewrite the policy well I know you would consider rewriting the policy others might consider it interpreting the policy or interpreting the scope of who is near north so I guess your position is it's not in there near north is near north end of story is that your position it's not in there you're supposed to interpret the policy based on what it says not based on after-the-fact arguments about what make more make more sense or what might be fair I use the example of a homeowner's insurance policy they live on a fault an earthquake zone they get a policy that covers a bunch of things but it excludes earthquake coverage there's a giant earthquake everybody says oh my god who would live on a fault and not purchase earthquake coverage but the policy doesn't cover everybody in California example or half of the people in California but the court can't come in after the fact ago well that's not reasonable that's not fair we're we're an earthquake endorsement is available but at a high price many people choose not to buy it even though they live they knowingly live on a fault but I don't really understand the border row I I guess I don't understand why there's an exclusion implied I don't think there's an exclusion implied but I don't what it it gives the policy number which is right and all it says about the policy is Beverly Hills properties endorsement what does that mean and why doesn't it cover the discrimination I don't know what that means it's not we didn't create that document it's not a National Union document but well you're you're not limited to documents you create the the only advantage you get of not creating the document is the doctrine of interpreting it contra pro forensic does not apply the policy the entire policy it's called an umbrella policy it has two parts the excess coverage coverage a and the umbrella coverage coverage B the policy is called umbrella though so the border oh seems to be referring to coverage under an umbrella policy which would be the whole policy but it only lists the policy term is beginning May 1st 2000 the whole policy started in 1999 I think November 1999 I just means that this border road didn't apply to the earlier time or it means that it applies to coverage a well why aren't these factual questions that I mean it seems like you've you've agreed that this border row indicates who's covered under coverage a even though it's not referenced in the policy I assume and it's not a part of the policy and so then the question is well does it also apply to coverage B and then you're providing us with some factual arguments which seem more appropriate for a district court to decide in the first instance how could we say as a matter of law it applies to a only and not be I'm not saying that it confirms they're covered under coverage a I'm saying it's consistent with what we do which the policy language says they're covered under coverage a there's this other document that can't change the policy and I'm saying well if you look at this other document which is not part of the policy and is not endorsement to the policy there's nothing on here that shows they're covered under coverage B there's some buried notion here that if you didn't write it and print it it doesn't affect you but it looks like it does just as a policyholder who didn't write or print the insurance policy is still bound and limited by its terms the policy says it can only be changed by an endorsement this is not an endorsement well the policy issue names who the insured is an endorsement one and so the factual question I think is what does that mean that in California at least a court would be willing to consider parole evidence to determine whether the parties had in mind when they issued a policy to a purchasing group that in fact the insured were the members of the purchasing group because that's the purpose of a purchasing group so that's not changing the policy that's interpreting the language of endorsement one right the so the language of endorsement one which identifies who the named insured is says it's a purchasing group right and so then the question is well does that mean that the insured are the members of the purchasing group since that's the purpose of a purchasing group is to purchase insurance together to cover their activities we agree that they're a member of the purchasing group I guess our view is that the policy doesn't provide coverage under coverage B for members of the named insured it only provides coverage for the named insured since I'm running out of time though I'd like to quickly address that the main argument which is the priority of the trial court's decision that there's nothing in this complaint that alleges a potential claim for unintentional discrimination our policy only covers or covers discrimination but then within the definition of discrimination if there's no coverage for discrimination by or at the direction of any insured as was discussed in argument federal's argument this complaint is repeat replete with allegations of intentional discrimination based on race or other protected status and it's a pattern in practice it's not random acts of discrimination this is a policy a pattern and a practice set forth by Sterling there's nothing in here that as the trial court said looking at this complaint there are no allegations of unintentional conduct there are no allegations of a neutral policy that played out wrong could could not a practice be a neutral policy not if that practice first of all everything is intentional that's what the complaint says which is a required allegation for disparate treatment understand and then following the intentionality provision of the complaint then there's another provision that talks about pattern or practice and so my question is is there anything in that provision of the complaint that would foreclose the disparate impact because you're talking about a practice and it could be a neutral practice but there are no neutral practices alleged the only practices that are alleged consistently throughout the complaint are treating non-asians differently from Asians for the most part I think there's some other races involved but treating people differently based on race intentionally that's the theme that's an overall theme of the complaint it's a clearly a disparate treatment theory and there are no allegations of acting through agents either every allegation in that complaint says that Sterling and that means in concert with together with if there aren't allegations of agents running off and doing things on their own there aren't part of Sterling's business if you were to prevail on the argument you're making now that the complaint alleges only intentional acts which would be expressly excluded from the definition of your policies coverage for discrimination do you need the why don't we have turn to your colleague for century insurance if you'll click 10 minutes on the clock for him morning your honors John Pierre for respondent century surety company century concurs with judge Klausner's rationale and with federal's argument that there is no coverage for intentional discrimination in this complaint alleges only what I would like to do is spend my few minutes talking about century surety's policy which provides even narrower coverage for the claims in u.s. versus sterling but before you get to that maybe you're going to cover it but I just would like to hear one of the other insurance companies talk about the impact of steadfast and what that means in terms of your coverage sure in with respect to century surety at least it is completely different our policy covers only accidental discrimination it clearly doesn't cover disparate impact discrimination and there's California case law on point that because our policy is limited to discrimination caused by an occurrence which is defined as an accident that accidental discrimination is the key and so the conduct that leads to the injury or the damage has to be accidental disparate impact doesn't satisfy that requirement and there is case law on point the Vista medical supply case for instance deals with that issue and in Vista medical supply it's an employment discrimination case the insured argued what maybe there's disparate impact and that would that would constitute the accident here and the the Vista medical supply court said no no no that's not right the act of setting an employment policy is intentional that and that's not an occurrence under a disparate impact theory a plaintiff does not need to prove that the employer intended to discriminate but the possibility that the employer may not have intended the harm does not create coverage under this policy what kind of discrimination claims what kind of discrimination claims would be covered under your policy accidental discrimination federal argues well that's illusory yeah well I'm asking you what what does that mean yeah my point was I went to the internet and just punched in accidental discrimination and I got dozens of hits or usually comes up with employment doesn't it you have some sort of test and no discrimination was intended but one group does better than the other on the test actually work those are but those are often disparate impact those are different impact it comes up in that in the situation of advertising as well a lot of the examples are advertising where an advertisement goes out and white power toothpaste people could take offense at that there are literally dozens of situations like that primarily in advertising there's a swastika in a have any less dramatic examples I'm trying to imagine one that would be plausible in the housing area of accidental discrimination disparate impact that isn't intentional in the area of housing I don't have one off the top of my head your honor it's an advertisement that goes out and misstates the requirements you look at on a billboard it says and actually there's an example right in the internet says Burlington mall Burlington mall blacks relocating to better serve you well the point is it's a blacks store that is there but the the billboard said blacks it's an accident it's a situation of accidental discrimination it would so a blacks a blacks apartment building would be an example in this case it was the owner of the building is there is a potential for accidental discrimination it's narrow and it's intentional you're saying that it's not an illusory it's not illusory coverage and is it advertising covered yes advertising is covered personal and advertising injury coverage but the point here is that century intentionally sold a narrower policy in fact the primary century policy which federal concedes was exhausted through payment is a completely affronting policy meaning it's all the insureds money both for defense and indemnity century got a $5,000 payment for writing the policy but it's essentially all self-insured that has the broader coverage that has the same coverage that federal and National Union have century chose to coverage in the insured accepted that under the policy that included real century money and we said we will only provide discrimination coverage based on accident and here there is clearly nothing accidental alleged in the complaint with respect to the charges against Sterling in the complaint moreover any facially neutral policy and there is none alleged in the complaint would would not satisfy the accident requirement I wanted to point out a recent California case it's a 2015 case on the negligent supervision issue came in after our brief after all the briefing was filed here it's the Albert versus mid city mid century insurance company 2015 to 36 Caleb for 1281 and this is you can give a copy of the citation to the clerk after the argument okay I just say to counsel in general that's why we have this little rule called 28 J so that we can get these as we often do on Friday night so we can at least look at them before the argument so just for downstream suggestion I apologize I wanted to point out the facts in mid and Albert are it not it's a tree trimming case not a discrimination case tree trimming case the allegation is that the neighbor hired an independent contractor coming in prune trees and the contractor comes in he prunes not only trees on the owner's side but prunes trees on the opposite adjacent neighbor's side Jason neighbor sues both the tree trimmer and sues the owner and the company says there's no accident here because the tree trimmer clearly intended to trim the trees that were that were in fact trimmed in the court agrees with that that's in fact the case so the insurance says well what about negligent supervision there's a there is at least a hint that there was negligent supervision here and negligent supervision would constitute an accident and therefore be covered and the Albert court we had none of that it said first of all the complaint doesn't allege any facts suggesting negligent supervision and then it goes on to say negligent supervision requires an employer supervising an employee who is incompetent or unfit the employer had reason to believe that undue risk of harm would exist because of the employment of that unfit contractor and harm occurs there are simply no facts in the complaint or otherwise supporting the elements of the claim my point is that if there were if to the extent the Sterling's knew that their employees or agents were out discriminating against non-koreans african-americans or whatever there is no coverage for that that's not an accident and I think that's the point that the court is making here finally with respect to vicarious liability your for vicarious liability to be covered under a policy like ours are actually like any of these policies the underlying claim has to be covered that's even in minkler the Supreme Court makes that point when it talks about derivative liability and says essentially if there's no in our case discrimination by because it is somehow removed from the conduct and the leading case on that in california is the directly on the diverse of northbrook property and casualty which is cited in our brief that's an employment discrimination case and it's it's right on point and a claim that alleges that he was wrongfully terminated and discriminated against he sues his the boss who fired him and he sues the company there's no coverage under the policy because it's a caused by accident policy is ours and clearly the wrong the wrongful termination was an intentional act the employer says well wait a minute no I'm vicariously liable I didn't do the hiring and the court in dire says no that's not right there is no coverage for that the question isn't who's covered under the policy the question is is there any coverage for this intentional act for anybody under the policy and the court answers no same is true here if there's no accidental discrimination which there isn't in this case then nobody has coverage for it that is what triggers coverage under the century surety policy thank you your time is expired thank you for your argument I know you had another minute he's got some time left but we'll give you and we extended a little here so we'll give you some additional time so give you a minute and a half thank you your honor first I want to point out that both the National Union and century surety policies say we cover discrimination but not committed intentionally buyer on behalf by or at the direction of the insured or any insured in the case of National Union and that formulation I just want to point out was the formulation of the exclusion in gray versus Zurich that the court found to be hopelessly confusing and resulted in the duty to defend in that case so that intentionally by or at the direction of is the formulation of the exclusion in Zurich and that's the exclusion they've used the National Union and century surety have used in their policies with regard to the named insured issue a lot of water over the dams in Zurich is that a lot of water over the dams in Zurich a lot of yes there is but I mean Delgado which is fairly recent talks about that fact and describes that exclusion as it discusses gray versus Eric you know so it's it's still current law with regard to the dire case that was a wrongful termination case and I think the point of what the courts say in there about vicarious liability is just that a company is not vicariously liable for the acts of its manager or supervisor terminating someone I I just don't understand it suppose some old lady in a nursing home inherits an apartment building and the managers manage it for she doesn't know anything about it really but it turns out her managers are that would certainly be but I don't understand it here well here I mean other there's talk about actions by them but which would you know if it's direct discrimination by them if it's a disparate treatment by them I agree that wouldn't be covered but I don't think that that's the allegations foreclosed disparate impact and they certainly don't foreclose vicarious liability because they talk about acts of agents and employees and they don't foreclose negligent negligent failure to supervise or train because the draft consent order draft consent decree specifically wanted training of all agents and employees so I think those are issues in this case. Thank you. Thank you your honor. Thank all the council for your argument this morning. Federal Insurance Company versus National Union and Century Assurity is submitted and we're adjourned for the morning.
judges: Kleinfeld, McKeown, Ikuta